UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | | |
|---|---|---|
| BEUFF ENTERPRISES FLORIDA, INC., | : | |
| MARY LISBERG and ROBERT | : | |
| GILBERT, | : | |
| | : | Civil Action No. 07-2159 (PGS) |
| Plaintiffs, | : | |
| | : | |
| v. | : | **OPINION AND ORDER** |
| | : | |
| VILLA PIZZA, LLC and WISHWELL | : | |
| INTERNATIONAL, INC., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**SALAS, United States Magistrate Judge,**

## I.   INTRODUCTION

Currently pending before this Court is a motion to strike jury demand brought by Defendants Villa Pizza, LLC ("Villa Pizza") and Wishwell International, Inc. ("Wishwell") (collectively, "Defendants").  Beuff Enterprises Florida, Inc., Mary Lisberg, and Robert Gilbert ("collectively, Plaintiffs") have submitted papers in opposition.  For the reasons set forth below, the motion is **DENIED WITHOUT PREJUDICE.**

## II.   BACKGROUND

Plaintiffs filed a complaint on May 8, 2007, alleging several causes of action, including breach of a franchise agreement, breach of the covenant of good faith and fair dealing, fraud, various anti-trust violations, and now a violation of the Americans with Disabilities Act

("ADA").[1]  (Docket Entry #1).  On July 23, 2007, Defendants filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) along with a motion to strike Plaintiffs' demand for a jury trial. (Docket Entry # 10, 11).  On January 23, 2008, the Honorable Peter G. Sheridan, United States District Judge, denied the motion to dismiss without prejudice and allowed Plaintiffs to amend their complaint to plead facts in support of their claims of antitrust and ADA violations.  (Docket Entry #26).  In response to Judge Sheridan's Order, Plaintiffs filed an amended complaint on January 31, 2008, to which Defendants filed a renewed motion to dismiss, on February 14, 2008.

While Judge Sheridan denied without prejudice the first motion to dismiss, Defendants' motion to strike jury demand remains pending.  On February 28, 2008, Judge Sheridan referred that motion to the undersigned for decision.

The basis for the parties' instant dispute over the applicability of a jury trial waiver revolves around Paragraph 43(i) of the franchise agreement, which states as follows:

> Waiver of Jury Trial.  THE PARTIES AGREE THAT ANY LEGAL ACTION IN CONNECTION WITH THIS AGREEMENT SHALL BE TRIED TO THE COURT SITTING WITHOUT A JURY, AND ALL PARTIES HERETO WAIVE ANY RIGHT TO HAVE ANY ACTION TRIED BY JURY."

(Def. Br., Adam Torine Dec. ("Torine Dec."), Exh. 1 at 36).  Defendants claim that this paragraph clearly precludes either party from asking for a jury trial.  Plaintiffs respond (1) that not all of the counts in the Complaint are "in connection with" the franchise agreement; and (2) that the alleged waiver was not voluntary or knowing.

---

[1] Plaintiffs added the ADA allegation in their November 4, 2007 Amended Complaint (Docket Entry #21).  Thus, it was not a part of the initial May 8, 2007 Complaint.

### III.    ANALYSIS

The Seventh Amendment to the United States Constitution protects a civil litigant's fundamental right to a jury trial.  *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937).  Thus, "courts indulge every reasonable presumption against waiver." *Id.* at 393.  However, a party can validly waive its constitutional right to a jury trial, so long as the waiver is knowing and voluntary. *Brookhart v. Janis,* 384 U.S. 1, 4-5, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Tracinda Corp. v. DaimlerChrysler AG,* 502 F.3d 212, 222 (3d Cir. 2007) (internal citations omitted).  The question of whether a party has validly waived its constitutional right to a jury trial is a federal question controlled by federal law.  *Tracinda*, 502 F.3d at 222 (internal citations omitted).

In order to determine whether a party has knowingly and voluntarily waived its jury trial right, federal courts have outlined a four-factor test: (1) the existence of a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the clause containing the waiver was conspicuous; (4) whether the opposing party had an opportunity to negotiate terms of the contract.  *Bishop v. GNC Franchising, LLC*, No. 05-827, 2006 WL 2266251, *1 (W.D.Pa. Jan. 13, 2006); *Aamco Transmissions, Inc. v. Harris*, No. 89-5533, 1990 WL 83336, * 1 (E.D.Pa. June 18, 1990).  The Court of Appeals for the Third Circuit has yet to determine whether the moving or opposing party bears the burden of proving a waiver (or non-waiver) of the right to a jury trial.  *Bishop*, 2006 WL 2266251 at *1.  While other circuits are split on the issue, district courts in the Third Circuit have agreed that "it will be the burden of the party seeking enforcement of a waiver of a jury trial clause to prove that such waiver was done both knowingly and intentionally."

*Hydramar, Inc. v. General Dynamics Corp.*, No. 85-1788, 1989 U.S. Dist. LEXIS 15784, *8
(E.D.Pa. Dec. 29, 1989); *Cottman Transmission Systems v. Melody*, No. 94-2038, 1994 WL
702913, *1 (E.D.Pa. Dec. 13, 1994).  Given the interest in guarding the fundamental right to a
jury trial and the presumption against waiver of that right, this Court follows the lead of the
*Hydramar* and *Cottman* courts and places the burden upon the party seeking to enforce a jury
trial waiver.

Moving to the merits of the motion, the parties disagree as to the application of each of
the four "knowing and voluntary" factors and thus the Court evaluates each factor in turn.

### 1.      Gross Disparity in Bargaining Power

Defendants argue that in addition to executing the franchise agreement, Plaintiffs
negotiated and entered into an addendum to the franchise agreement as well a sublease
agreement.  They argue that this type of negotiation evidences the lack of any gross disparity in
bargaining power.  (Opening Br. 4).  They also cite to *Bakrac, Inc. v. Villager Franchise Systems,
Inc.*, 164 Fed. Appx. 820, 824 (11th Cir. 2006) for the proposition that the ability to negotiate an
addendum is indicative of the lack of any gross disparity in bargaining power.  Plaintiffs'
opposition focuses upon Defendants financial and organizational clout, noting that as a "multi-
million, multi-unit international franchise," they have vastly superior bargaining power to
Plaintiffs.  (Opp. Br. 6).  Plaintiffs also argue that they had no opportunity to negotiate either the
addendum or the sublease agreement.  (Opp. Br, Lisberg Dec. ¶¶ 36-39).

Having evaluated the parties' arguments, the Court has insufficient information before it
upon which to decide whether or not a gross disparity of bargaining power existed.  In the *Bakrac*
case, the franchisee clearly negotiated an Addendum and thus the Court found that the contract

was negotiable.  *Bakrac*, 164 Fed. Appx. at 824.  Whether any negotiation occurred here is unclear and thus the *Bakrac* case is not entirely on point.  The Court has before it no evidence as to whether Plaintiffs were represented by counsel or whether they had a lawyer review the franchise agreement before entering into it.  *Cottman*, 1994 WL 702913 at *3.  Moreover, though Plaintiffs indicate that they could not negotiate terms of the various agreements, nothing in the record corroborates or negates that assertion.  The Court does not know, for instance, whether Plaintiffs suggested changes or could have suggested changes to the agreements.

Thus, as to factor one, the record is unclear and therefore Defendants have not sustained their burden.  Thus, this factor weighs in favor of Plaintiffs.

### 2.        Professional Experience of Party Opposing the Waiver

Defendants, through Adam Torine's declaration, claim that Plaintiff Robert Gilbert is a "college-educated man with many years of experience in business."  (Torine Dec. ¶ 3).  Unaccompanied by proof of any other form (e.g., a resume), this statement is not enough to sustain Defendants' burden.  Meanwhile, however, Plaintiff offers no facts to rebut such a declaration.  The fact of the matter is that, like the first factor, there are insufficient facts before the Court to determine whether or not Plaintiffs actually had the necessary professional experience to understand a jury waiver provision.  In *Cottman*, 1994 WL 702913 at *1, the Court found this element satisfied upon examination of Defendant's resume.  The resume indicated a college education, over twenty years of work experience, and high-level positions including president/CEO of a worldwide manufacturing company.  *Id.*  Moreover, the party opposing the waiver provision was specifically advised of the provision in a tape-recorded colloquy conducted before execution of the final agreement.  *Id.* at *2.

Unlike the *Cottman* court, this Court does not have a resume or question-and-answer transcript before it.  In fact, it has no confirmed information about Plaintiffs' work experience and overall education.  Thus, this factor weighs in favor of Plaintiffs, as Defendants have not sustained their burden.  *See The Bevill Co. v. Sprint/United Mgmt Co.*, No. 01-2524, 2006 WL 2921006 at *1 (D. Kan. Oct. 11, 2006) (finding that the Court could not determine whether plaintiff's decision to enter into the waiver was voluntary because it had no information about plaintiff's education, experience, or whether he was represented by counsel).

### 3.       Conspicuousness of Waiver Provision

The franchise agreement sets forth the jury waiver clause in all capital letters in a separate provision entitled "Waiver of Jury Trial."  (Torine Dec., Exh. 1 at 36).  Plaintiffs argue unconvincingly that the provision "was buried in a document one inch think" and that while it was capitalized, it was not in bold font.  (Opp. Br. 4).  The simple fact is that courts have routinely held waiver provisions such as this to be conspicuous and Plaintiffs fail to alert the Court to a case holding otherwise.  *See, e.g.*, *Aamco,* 1990 WL 83336 at *2 (finding a waiver provision printed in the same size as the rest of agreement and set apart in the section involving potential litigation to be conspicuous).  Thus, as to this element, the Court finds the waiver provision in this case to have been conspicuous.

### 4.       Opportunity to Negotiate Terms of the Contract

The fourth and final factor asks whether the opposing party had an opportunity to negotiate the terms of the contract.  On this point, Plaintiffs argue that "[d]efendants refused to negotiate any terms of the franchise agreement."  (Opp. Br. 4).  Plaintiffs' arguments as to this factor appear to blend in to the arguments regarding factor one, as both evidence a lack of overall

negotiating power.  However, courts have routinely held that franchise agreements are not contracts of adhesion.  Unlike insurance contracts or landlord-tenant agreements, a prospective franchisee has other options.  *Aamco Transmissions, Inc. v. Harris*, No. 89-5533, 1990 WL 83336 at \*4-5 (E.D.Pa. June 18, 1990).   The Plaintiffs were under no particular pressure to purchase the franchise at issue and therefore the fact that they may not have had the opportunity to negotiate specific contractual terms carries little weight.  *Bishop*, 2006 WL 2266251 at \*1 ("Even if they did not have an opportunity to negotiate the contract terms, it was not a contract of adhesion and they were under no pressure to purchase the franchises at issue.") Thus, this factor weighs in favor of Defendants.

## IV.   CONCLUSION

In sum, Defendants have met their burden with regard to the latter two factors but have failed to do so as to the issues of gross disparity in bargaining power and Plaintiffs' professional experience.  Thus, the Court **DENIES WITHOUT PREJUDICE** the motion to strike jury demand.

Once sufficient discovery has taken place so as to allow the parties to supplement their submissions on the first two factors, the Court will entertain Defendants' renewal of the present motion.

The Clerk of the Court shall terminate Docket Entry # 11.

**SO ORDERED.**

s/ Esther Salas

**ESTHER SALAS**
**UNITED STATES MAGISTRATE JUDGE**

-7-